## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRUCE TORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | NO. |
| | ) | |
| FIRST PREMIER BANK, | ) | |
| FIRST PREMIER BANKCARD, and | ) | |
| UNITED NATIONAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## Class Action Complaint

Plaintiff, Bruce Tory, individually and on behalf of all others similarly situated (the "Class"), brings this class action against Defendants First Premier Bank, First Premier Bankcard, and United National Corporation (collectively "FIRST PREMIER BANK" or the "Company") and alleges as follows:

## NATURE OF THE ACTION

1.      This class action seeks recovery of monetary damages as a result of the illicit activities undertaken by FIRST PREMIER BANK while marketing and selling products associated with their credit cards known as "Premier Credit Protection," and other monikers of the Company that all offer similar coverage.

2.      Although FIRST PREMIER BANK's Credit Protection is indistinguishable from a contract of credit insurance, Credit Protection is not marketed or sold as insurance. FIRST PREMIER BANK does not register Credit

1

Protection with the Illinois Department of Insurance, thereby avoiding state regulation.

3.      FIRST PREMIER BANK violated the law through the sale of a product that should be – but is not, due to its unlawful activities – subject to insurance regulations, but also by the deceptive and misleading manner in which it offers the Credit Protection plan to consumers, and the manner in which it administers claims for benefits by consumers.

4.      Defendants market Credit Protection through direct mail and telemarketing and the internet. It represents Credit Protection as a service that pays the required minimum monthly payment due on the subscriber's credit card account and excuses the subscriber from paying the monthly interest charge and the Credit Protection plan fee for a limited period of time, preventing the account from becoming delinquent.

5.      Despite its simple explanation for marketing purposes, FIRST PREMIER BANK's Credit Protection plan is a dense maze of limitations, exclusions and restrictions, making it impossible for consumers to determine what Credit Protection covers and whether it is a sound financial choice.

6.      Defendants do not make any effort to determine whether a cardholder is eligible for Credit Protection benefits at the time of sale. As a consequence, the Company bills thousands of retired persons, along with the unemployed as well as disabled individuals, for Credit Protection coverage, even though their employment or health status prevents them from receiving benefits under the plan.

2

7.      Defendants do not make any effort to determine whether subscribers become ineligible for Credit Protection benefits after they are enrolled in the plan. Accordingly, when subscribers' employment or health statuses change, they will continue to pay for the product even though they may no longer be eligible for benefits under the plan.

8.      Defendants require customers to enroll for Credit Protection coverage before it provides subscribers with the terms and conditions of the plan. After a subscriber is enrolled, the person may then affirmatively cancel the plan through what FIRST PREMIER BANK markets as a "30-day satisfaction guaranteed". By not adequately disclosing the terms of Credit Protection coverage to consumers before they buy the product, FIRST PREMIER BANK is violating – among other things – Illinois' Consumer Fraud Act.

9.      Days or weeks after the sale of Credit Protection, FIRST PREMIER BANK may in some instances mail written material to the subscriber. Given the confusing way the written materials present the terms and conditions of Credit Protection, it would be extremely difficult for a subscriber to decipher those provisions.

10.     Defendants established its "customer service" support in such a way that subscribers cannot easily cancel the plan or receive answers to benefit questions.  It has established its "claim filing" system such that subscribers cannot easily file claims or receive benefits for filed claims.

11.     FIRST PREMIER BANK neither refunds Credit Protection premiums after it has denied subscribers' claims for Credit Protection benefits nor

does it address subscribers' continued obligations to pay the monthly fee for Credit Protection after a claim has been denied.

12.     Credit Protection is so confusing as to when coverage is triggered, so restricted in terms of the benefits it provides to subscribers, and processing claims is made so difficult by FIRST PREMIER BANK, that the product is essentially worthless.

13.     FIRST PREMIER BANK knows that for those cardholders who choose to pay for Credit Protection, few will ever receive benefits under the plan and even for those that do, the amounts paid in "premiums" will usually exceed any benefits paid out.

14.     As a result of its misleading and deceptive marketing practices in connection with sales of Credit Protection, FIRST PREMIER BANK has increased its profits by many millions of dollars, all thanks to a product which provides virtually no benefits to thousands of subscribers who are nevertheless charged for the product each month.

## **JURISDICTION AND VENUE**

15.     This Court has jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that:

   a.  This is a class action involving 100 or more class members;
   b.  Plaintiff is a citizen of the State of Illinois and a resident of this District;
   c.  First Premier Bank, according to its documents and website, has its principal place of business in Sioux Falls, South Dakota.  It bills itself as the 10th largest issuer of MasterCard credit cards and serves nearly 3 million customers nationwide.

16.     This case is properly maintainable as a class action pursuant to and in

accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

a. The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

b. There are substantial questions of law or fact common to the class including those set forth in greater particularity in Paragraph 58 below;

c. This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure

d. questions of law or fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

e. a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

f. the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

g. there are no unusual difficulties foreseen in the management of this class action.

17.    The Court has personal jurisdiction over FIRST PREMIER BANK, which has at least minimum contacts with the State of Illinois because it has conducted business here and has availed itself of Illinois' markets through its promotion, sales, and marketing efforts.

18.    This Court has supplemental jurisdiction over the state law claims pursuant to 28U.S.C. § 1367.

19.    This Court is a proper venue in which to bring this action, pursuant to 28 U.S.C. § 1391, inasmuch as a substantial part of the events or omissions giving rise to the claims occurred within the District.

## PARTIES

### A.    Plaintiff

20.    Bruce Tory ("Tory") is a citizen of the State of Illinois and

5

resides in this District. He was issued MasterCard credit card in his name issued

from FIRST PREMIER BANK bearing Credit Protection features.

### B. Defendants

21.    Upon information and belief, Defendant FIRST PREMIER BANK

has its principal place of business in Sioux Falls, South Dakota.

- FIRST PREMIER BANK is one of the largest banks in the United States. According to its website, it claims that: PREMIER Bankcard is the 10th largest issuer of VISA® and MasterCard credit cards in the country serving more than 3.5 million customers nationwide.

- Every year, millions of Americans find themselves faced with bad credit sometimes due to illness, divorce, loss of job or other tough circumstances. Aside from poor credit costing individuals thousands of dollars a year in higher interest rates, in severe cases, a person can even be denied credit. As a national market leader PREMIER Bankcard focuses on individuals who have less than perfect credit but are actually still creditworthy. We take pride in offering a transitional tool to help our customers nationwide develop better credit habits.

- Our formal complaint rate of .00062 on a portfolio of 3.5 million customers is a testimony of our passion to serve individuals who want to establish better financial habits nationwide.

- PREMIER Bankcard operates service facilities in Sioux Falls, Dakota Dunes, Huron, Spearfish and Watertown, South Dakota.

- We were the first financial institution in the world and the first in North America to be certified to the ISO 27001 standard, the only internationally recognized information security standard.

22.    Premier Bankcard is the entity which runs the First Premier credit

card system and has its principal place of business in Sioux Falls, South Dakota.

23.    United National Corporation ("UNC") is incorporated in South

Dakota and has its principal place of business in Sioux Falls South Dakota. UNC is

the holding company of First Premier Bank and, upon information and belief,

controls and approves the policies and practices of First Premier Bank and Premier

Bankcard. In addition, the profits of First Premier Bank and Premier Bankcard flow upstream to UNC.

## FACTUAL ALLEGATIONS

24.     Credit Protection is self-described by FIRST PREMIER BANK as a non-insurance product. FIRST PREMIER BANK has not registered or identified Credit Protection as an insurance product with the Illinois Department of Insurance or other appropriate authorities.

25.     Upon information and belief, FIRST PREMIER BANK offers Credit Protection to all its credit card customers, but aggressively markets this product to vulnerable Illinois consumers who fall into the subprime credit category, or customers who have low credit limits because of impaired credit ratings

26.     FIRST PREMIER BANK markets Credit Protection as a service that will safeguard subscribers' credit card accounts by crediting the required minimum monthly credit card payments due in certain highly restricted circumstances, or permanently canceling accounts in other circumstances. In such circumstances, the subscribers are also not required to pay the monthly interest charges or the Credit Protection plan fee for the month in question.

27.     FIRST PREMIER BANK also markets other "add-on" benefits associated with its Credit Protection plan, like telephone and online resources to manage personal/professional matters and daily credit monitoring, for an added cost.

28.     FIRST PREMIER BANK sells Credit Protection to consumers

7

through a number of different channels, including direct mail marketing and over the internet.

29.     FIRST PREMIER BANK shifts its burden and duty of full disclosure prior to the sale to the customer and requires subscribers to decipher the terms of the product after it has already been purchased and take action to cancel it. It characterizes this sales scheme as a "30-day satisfaction guarantee" such that "[i]f you are not completely satisfied, just cancel in the first 30 days and get a refund of any fee billed." In fact, the obligation is affirmative: "[u]nless you cancel, this fee will be charged to your enrolled credit card each month."

30.     Even if the subscriber is later provided with written materials from FIRST PREMIER BANK, it is virtually impossible for the subscriber to determine all of the exclusions and limitations of Credit Protection, or the value of the product, based on what is provided.

31.     Upon information and belief, FIRST PREMIER BANK imposed charges for "Credit Protection" upon Illinois consumers even though individual consumers did not request the product or clearly assent to pay for the product in writing after getting the opportunity to review its governing terms.

32.     The terms of FIRST PREMIER BANK's Credit Protection schemes are varied and complicated. However, the Credit Protection plan provides for some form of benefit upon the occurrence of "covered events," including *"Job Loss, Disability, Family Leave and Hospitalization"* and further provides a benefit in the event of death.

33.     The restrictions, limitations and exclusions associated with these

8

Credit Protection covered events and the proofs required to establish them are expansive and constantly evolving.

34.    An example of the misleading language is FIRST PREMIER BANK's failure to disclose that Credit Protection is actually akin to an insurance product. Despite this fact, FIRST PREMIER BANK's marketing materials carefully avoid any use of the word "insurance." The fees paid for Credit Protection by consumers are actually premiums.

35.    According to the written materials which are only provided <u>after</u> subscribers have already been enrolled in the plan, the following restrictions on Credit Protection are imposed. However, these restrictions are not readily comprehensible to subscribers:

> a.    Credit Protection does not apply for the first 30 days of unemployment or disability;
> b.    Credit Protection coverage is limited to 12 months;
> c.    Enrollment in the Credit Protection coverage plan does not begin 30 days before a protected Event may be activated;
> d.    At least 120 days must elapse between one Activation period and the beginning of another for the same type of event, *i.e.*, job loss; and
> e.    Charges for Credit Protection will continue during any benefit activation for Job Loss, Disability, Family Leave or Hospitalization.

36.    Upon information and belief, FIRST PREMIER BANK is in possession of information, such as date of birth and name of last employer, which would assist FIRST PREMIER BANK in knowing whether a particular cardholder is eligible for Credit Protection.

37.    However, FIRST PREMIER BANK makes no reasonable efforts and

does not undertake any investigation, including review of information in its possession regarding the cardholder, to determine if Credit Protection coverage would apply to the cardholder. Accordingly, FIRST PREMIER BANK engages in marketing to enroll individuals in Credit Protection even when it has information in its possession indicating that the product may have limited or no value to the consumer, the purpose of which is to generate substantial fee and charges income.

38.     For instance, Illinois retired, unemployed or other persons  are charged for this product even though they are excluded from receiving most or all of the benefits under the plan. In fact, FIRST PREMIER BANK's application does not even ask customers their employment status.

39.     Benefits are unavailable or limited for disabled persons, but FIRST PREMIER BANK nevertheless fails to affirmatively inform these individuals of the limitations in benefits when they are enrolled. In fact, FIRST PREMIER BANK does not even ask customers whether they are disabled.

40.     The cost of Credit Protection is a monthly charge of $0.89 per $100 of a subscriber's month-ending credit card balance. "Add-on benefits" cost the subscriber an extra charges.

41.     Credit Protection also provides the added benefit to FIRST PREMIER BANK of lowering available credit to its subscribers through the imposition of this additional fee. Further, the imposition of the fee creates a cycle of profitability for FIRST PREMIER BANK, in that the fee itself increases subscribers' monthly credit balances, which in turn increases Credit Protection fees

in upcoming months.

42.     "Customer service" is available for FIRST PREMIER BANK's Credit Protection subscribers. To access customer service, subscribers can call a 1-800 number or send mail to a P.O. Box in Sioux Falls, South Dakota.

43.     FIRST PREMIER BANK has established its customer service system in such a way that it is difficult for subscribers to cancel Credit Protection, to get detailed information about claim benefits or restrictions, or to file claims.

44.     Further, when claims for Credit Protection benefits are denied, FIRST PREMIER BANK has not implemented a process through which subscribers' Credit Protection premiums are refunded, even if the subscribers are deemed to be *per se* ineligible for Credit Protection benefits. In fact, if subscribers are denied Credit Protection benefits, FIRST PREMIER BANK neither affirmatively removes subscribers from Credit Protection enrollment going forward, nor is it FIRST PREMIER BANK's policy to inform subscribers of their continued obligations pay for Credit Protection even though they have been deemed to be ineligible for benefits.

45.     FIRST PREMIER BANK claims that it is the 10th largest issuer in the world of MasterCard credit cards and is responsible for a substantial amount of FIRST PREMIER BANK's overall profits. Credit Protection is a profit center for FIRST PREMIER BANK and serves the Company's interest in generating fee income, to the detriment of its most vulnerable customers.

46.     The Credit Protection device is designed to prey on the financially insecure and is virtually worthless because of the numerous restrictions that are

imposed, because of the exclusions of benefits, and because of the continuing charges and administrative and bureaucratic hurdles that are placed in the way of subscribers who attempt to secure payments from FIRST PREMIER BANK under Credit Protection coverage.

## FACTUAL ALLEGATIONS AS TO TORY

47. Tory enrolled for and became a FIRST PREMIER BANK credit card holder. In approximately 2009, Tory became enrolled in Credit Protection through FIRST PREMIER BANK's Credit Protection plan.

48. At the time Tory became enrolled in Credit Protection, he was unemployed. However, no one from FIRST PREMIER BANK ever asked Tory about his employment status before enrolling him in the Credit Protection plan.

49. Tory has continued to pay for Credit Protection.

50. Tory, who works in the construction industry, has made at least one claim under the Credit Protection plan but it was declined.

## CLASS ACTION ALLEGATIONS

51. Plaintiff brings this action on his own behalf and on behalf of a class of all other persons similarly situated (the "Class"), pursuant to Rule 23 of the Federal Rules of Civil Procedure.

52. Plaintiff brings this action as a class representative to recover damages and/or refunds from FIRST PREMIER BANK for consumer fraud as expressly defined in Consumer Fraud Act, injunctive relief, declaratory judgment, and unjust enrichment.

53. This action satisfies the numerosity, commonality, typicality,

adequacy, predominance, and superiority requirements of the Federal Rules of Civil

Procedure Rule 23(a) and (b).

54.     Plaintiff seeks certification of a class comprised of the following

First Premier Bank and consumers:

> All residents of the State of Illinois who (1) were solicited by
> FIRST PREMIER BANK to purchase Credit Protection; and (2) paid
> for Credit Protection ("Credit Protection Subscribers") at all times the
> product was sold.

55.     Plaintiff also seeks certification of the following subclass

comprised of the following Illinois First Premier Bank and consumers:

> All residents of the State of Illinois who were not eligible for full
> benefits, or whose eligibility for benefits were limited by express
> exclusions, including but not limited to those Credit Protection
> subscribers who were retired, self-employed or part time or seasonal
> workers, or were disabled, either at the time that they were solicited
> for and made payments to FIRST PREMIER BANK for Credit
> Protection, or any time thereafter while continuing to pay for Credit
> Protection.

56.     Excluded from the Class and subclass are:

a. Defendants and any entities in which Defendants have a
controlling interest;
b. Any entities in which Defendants' officers, directors, or
employees are employed and any of the legal representatives,
heirs, successors or assigns of Defendants;

57.     <u>Numerosity – Fed. R. Civ. P. 23(a)(1).</u> The Class is comprised of

more than 100 people and possibly hundreds of thousands of individuals who

were FIRST PREMIER BANK customers who are geographically dispersed,

the joinder of which in one action would be impracticable. The exact number or

identification of the Class members is presently unknown. The identity of the

Class is ascertainable from Defendant's books and records. In addition to rolls maintained by the Defendant and its agents, the Class may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means. The disposition of the claims of the proposed class members through this class action will benefit both the parties and the Court.

58.     Predominance of Common Questions – Fed. R. Civ. P. 23(a)(2), 23(b)(3). There is a well-defined community of interest in the questions of law and fact involved affecting members of the Class. The questions of law or fact common to the Class predominate over questions affecting only individual Class members, and include, but are not limited to, the following:

a.   Whether FIRST PREMIER BANK's sales, billing, and marketing scheme as alleged in this Complaint is fraudulent, deceptive, unlawful, and/or unfair in violation of Illinois law;
b.   Whether FIRST PREMIER BANK's common and uniform sales, billing, and marketing scheme related to Credit Protection insurance as alleged in this Complaint constitutes a deceptive trade practice under Illinois law;
c.   Whether the Plaintiff and the Class are entitled to restitution of all amounts acquired by FIRST PREMIER BANK through its common and uniform scheme;
d.   Whether Plaintiff and the Class are entitled to injunctive relief requiring the disgorgement of all fees wrongfully collected by FIRST PREMIER BANK;
e.   Whether Plaintiff and the Class are entitled to prospective injunctive relief enjoining FIRST PREMIER BANK from continuing to engage in the fraudulent, deceitful, unlawful, and unfair common scheme and conduct as alleged in this Complaint; and
f.   Whether Plaintiff and the Class are entitled to recover compensatory and punitive damages as a result of FIRST PREMIER BANK's wrongful scheme.

14

59. <u>Typicality – Fed. R. Civ. P. 23(a)(3).</u> Plaintiff's claims are typical of the Class, having all been targeted by FIRST PREMIER BANK as consumers and who were improperly assessed and paid charges for Credit Protection. Plaintiff and the Class have similarly suffered harm arising from FIRST PREMIER BANK's violations of the law as alleged in this Complaint.

60. <u>Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1).</u> Plaintiff is an adequate representative of the Class because he fits within the class definition and his interests do not conflict with the interests of the members of the Class he seeks to represent. Plaintiff is committed to prosecute this litigation vigorously for the benefit of the entire Class and he has retained and is represented by experienced and able attorneys who have litigated numerous class actions, and who intend to prosecute this action vigorously for the benefit of the Class.

61. <u>Superiority – Fed. R. Civ. P. 23(b)(3).</u> The class action is the superior method for the efficient adjudication of this litigation because individual litigation of by members of the Class would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiff and members of the Class have suffered irreparable harm as a result of FIRST PREMIER BANK's fraudulent, deceitful, unlawful, and unfair conduct. Because of the size of the individual Class members' claims, no member of the Class could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would continue to suffer losses, as FIRST PREMIER BANK continues to engage in

the unlawful, unfair, and unconscionable conduct that is the subject of this Complaint, and FIRST PREMIER BANK would be permitted to retain the proceeds of its violations of law. Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### COUNT I – ILLINOIS CONSUMER FRAUD ACT VIOLATION

62.     Plaintiff restates and re-alleges the preceding paragraphs of the Complaint as though set out here.

63.     FIRST PREMIER BANK's Credit Protection policies and practices are substantively and procedurally unconscionable in the following material respects, among others:

a.  FIRST PREMIER BANK does not provide the terms and conditions of Credit Protection to subscribers until <u>after</u> they have enrolled in the plan;
b.  The written documents that FIRST PREMIER BANK does eventually provide to subscribers do not provide subscribers with sufficient information to understand the terms and conditions of Credit Protection;
c.  The documents are contracts of adhesion in that they are standardized forms, imposed and drafted by FIRST PREMIER BANK, which is a party of vastly superior bargaining strength, and only relegates to the subscriber the opportunity to adhere to them or reject the agreement in its entirety;
d.  The documents provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not unambiguously state that certain customers are *per se* ineligible to receive benefits, even though FIRST PREMIER BANK had the information and means of determining eligibility prior to enrolling these customers in Credit Protection;
e.  FIRST PREMIER BANK does not alert customers that certain individuals are *per se* ineligible for Credit Protection benefits, including but not limited to retired, unemployed, persons employed on a part-time or seasonal basis

16

and those that are disabled.

f. The amount charged in fees for Credit Protection is not rationally related to the amount of value Credit Protection provides to subscribers, nor is the value of Credit Protection computable or discernable by subscribers;

g. FIRST PREMIER BANK charges exorbitant fees for Credit Protection, much more than the value of the benefits offered or paid out to subscribers, and is able to do so because FIRST PREMIER BANK does not identify Credit Protection as an insurance product, which would require it to provide fees and claims-paid data to state authorities for review and regulation;

h. The formula FIRST PREMIER BANK uses to compute Credit Protection fees is misleading, such that subscribers are unable to budget for this product or understand its overall cost in order to determine its value to subscribers.

64. Considering the great business acumen and experience of FIRST PREMIER BANK in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

65. The imposition of Credit Protection fees which excessively exceed the amount of claims-paid by a rate higher than any insurance product would be permitted to charge for premiums is itself unconscionable. Such fees are not reasonably related to FIRST PREMIER BANK's costs of administering the plan and providing the benefits offered.

66. Plaintiff and the Class have sustained damages as a result of FIRST PREMIER BANK's unconscionable policies and practices as alleged herein.

17

## COUNT II-BREACH OF CONTRACT

67.     Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here.

68.     Plaintiff has fulfilled all conditions precedent to the bringing of this action.

69.     Although Plaintiff was eligible for benefits for which he paid monthly, First Premier Bank denied his claim for benefits.

70.     First Premier Bank breached its covenant of good faith and fair dealing which is implied in all contracts in Illinois.

71.     As a result of Defendants' breach of their agreement, Plaintiff has been damaged.

## <u>COUNT III – INJUNCTIVE RELIEF AND RESTITUTION</u>

72.     Plaintiff restates and re-alleges the preceding paragraphs of this Complaint as though set out here.

73.     Plaintiff asks the Court to grant the remedy of restitution to him and to the Class who made payments to FIRST PREMIER BANK for Credit Protection. The Plaintiff requests the Court to grant the following relief:

a. a refund of all Credit Protection payments made to FIRST PREMIER BANK;

b. a refund to any consumers who were retired at the time they were sold Credit Protection by FIRST PREMIER BANK or at any time they paid for Credit Protection;

c. a refund to any consumers who were ineligible for benefits, or who faced additional restrictions to receive benefits as a result of their health or employment status, at the time they were sold Credit Protection by FIRST PREMIER BANK or at any time they paid for Credit Protection;

18

d.  a refund to consumers who were otherwise not eligible for Credit
Protection benefits at any time they paid for Credit Protection; and/or

e.  a refund of all amounts FIRST PREMIER BANK assessed for Credit
Protection that were in excess of sums which would have been permissible
had FIRST PREMIER BANK correctly identified the service as insurance.

74.     Further, Plaintiff seeks injunctive relief enjoining FIRST PREMIER

BANK from continuing to engage in the fraudulent, deceitful, unlawful, and unfair

common scheme described in this Complaint.

## COUNT IV – DECLARATORY RELIEF

75.     Plaintiff restates and re-alleges the preceding paragraphs of this

Complaint as though fully set out here.

76.      Plaintiff seeks a Declaratory Judgment finding that the conduct

of FIRST PREMIER BANK is in violation of Consumer Fraud Act, and

enjoining it from continuing in such conduct.

## COUNT V – UNJUST ENRICHMENT

77.     Plaintiff restates and re-alleges the preceding paragraphs of this

Complaint as though fully set out here.

78.     In seeking to sell credit cards to Plaintiff and members of the Class,

FIRST PREMIER BANK withheld material terms from consumers prior to activation

of Credit Protection charges, including the express benefits, limitations,

restrictions, and exclusions associated with the product.

79.     FIRST PREMIER BANK was unjustly enriched by charging Plaintiff

and the Class sums for Credit Protection coverage that were in excess of amounts

which would have been permissible had FIRST PREMIER BANK properly identified

19

the service as insurance.

80.     FIRST PREMIER BANK was unjustly enriched by the practice of signing people up for Credit Protection that never agreed to be plan members.

81.     FIRST PREMIER BANK was unjustly enriched by the practice of withholding material terms of Credit Protection until after the product was charged to consumers' credit cards.

82.     FIRST PREMIER BANK was unjustly enriched by its business practice of making it so impermissibly difficult for consumers to actually receive coverage under Credit Protection that the service was virtually worthless. Such unconscionable acts include, but are not limited to:

   a.   Denying claims over the phone without written explanation;
   b.   Denying claims without sufficient investigation;
   c.   Requiring claimants to submit excessive and duplicate documentation.

83.     FIRST PREMIER BANK was unjustly enriched by charging Plaintiff and the Class members for illusory benefits.

84.     FIRST PREMIER BANK was unjustly enriched by charging Plaintiff and the Class members who were retired or were otherwise not eligible to receive payments by the terms of the Credit Protection plan.

85.     As a result of FIRST PREMIER BANK's actions which constitute unjust enrichment, Plaintiff and the Class members suffered actual damages for which FIRST PREMIER BANK is liable. FIRST PREMIER BANK's liability for those damages should be measured by the extent of their unjust enrichment.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays:

20

A.      That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure. The Plaintiff is a proper class representative and his counsel be counsel for the Class;

B.      That judgment be entered against FIRST PREMIER BANK and in favor of Plaintiff and the Class on the claims in this Complaint, for injunctive relief as requested above, and for actual, compensatory, punitive, and treble damages in an amount to be determined at trial;

C.      That judgment be entered imposing interest on damages, litigation costs, and attorneys' fees against FIRST PREMIER BANK;

D.      For all other and further relief as this Court may deem necessary and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

By: s/*Marvin A. Miller*
Marvin A. Miller
Matthew E. VanTine
Lori A. Fanning
**MILLER LAW LLC**
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
312/332-3400
mmiller@millerlawllc.com

Ruben Honik
Richard M. Golomb
Kenneth J. Grunfeld
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102
(215) 985-9177

Curtis L. BowmanMarcus
N. Bozeman
Randall K. Pulliam11311 Arcade Drive, Suite 200
Little Rock, Arkansas 72212
CARNEY WILLIAMS BATES
BOZEMAN & PULLIAM, PLLC
Tᴇʟ: (501) 312-8500
Fax: (501) 312-8505