# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 7326 | **DATE** | 9/26/2011 |
| **CASE TITLE** | Tory vs. First Premier Bank, et al. | | |

**DOCKET ENTRY TEXT:**

For the reasons stated below, the arbitration provision is enforceable. Defendants' motion to submit additional authority is granted. Defendants' motion to compel arbitration is granted. This case is stayed pending arbitration. Defendants' motion to dismiss is denied as moot.

*[signature: Philip G. Reinhard]*

■[ For further details see text below.]

Electronic Notices.

## STATEMENT - OPINION

Plaintiff, Bruce Tory, brings this putative class action against defendants, First Premier Bank, Premier Bankcard, and United National Corporation asserting several state law claims. Jurisdiction is alleged under the Class Action Fairness Act, 28 U.S.C. § 1332 (d). The complaint alleges a violation of the Illinois Consumer Fraud Act (Count I), breach of contract (Count II), and unjust enrichment (Count V). It also seeks injunctive relief and restitution (Count III) and a declaratory judgment (Count IV). Defendants move to compel arbitration and alternatively to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12 (b) (6). While these motions were pending, the United States Supreme Court decided AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S.Ct. 1740 (2011). The court requested, and received, supplemental briefs on the impact of Concepcion on the motion to compel arbitration.

Plaintiff obtained a credit card from First Premier Bank. The credit card agreement ("Agreement") contains an arbitration clause. The arbitration clause provides in part: "Any claim arising out of or relating to this Contract, or the breach of this Contract or your Credit Account, shall be resolved and settled exclusively and finally by binding arbitration in accordance with this Provision." The arbitration clause also provided a waiver of any right to pursue any claim as a class action. It further gave plaintiff a right to opt-out of the arbitration provision and to retain his rights to litigate in court by providing First Premier Bank with written notice within thirty days of the opening of his account. Plaintiff did not opt-out.

Plaintiff became enrolled in First Premier Bank's credit protection plan ("Plan"). The Plan provides some form of benefit related to the outstanding balances and minimum payments due on plaintiff's credit card with First Premier Bank on the occurrence of certain "covered events" (death, job loss, disability, family leave, and hospitalization). At the time plaintiff became enrolled in the Plan, he was unemployed. Plaintiff's credit card was billed each month at the rate of $.89 per $100 of his outstanding credit card balance to participate in the Plan. Plaintiff made at least one claim under the Plan which was declined. Plaintiff has continued to pay for the Plan. The terms of the Plan are set out in a document entitled PREMIER Credit Protection Contract. This document does not contain an arbitration clause. This document apparently was not signed by plaintiff.

The threshold question is whether the arbitration provision in the Agreement applies to plaintiff's claims concerning credit protection and disputes arising under the Plan. The Agreement's arbitration clause states it applies to "[a]ny claim arising out of or relating to this Contract, or the breach of this Contract or your Credit Account." The Agreement defines "claim" to mean "any claim, dispute, or controversy by either you or us, arising out of or relating in any way to this Contract, this Provision (including claims regarding the applicability, enforceability, or validity of this Provision), your Credit Account, any transaction on your Credit Account, and our relationship."

It is apparent from reviewing the Plan that the Plan's very existence depends on the Agreement and the credit account the Agreement establishes. The Plan's benefits are exclusively tied to the outstanding balances and minimum payments due on the credit account created by the Agreement. The occurrence of certain events specified in the Plan obligates First Premier Bank to provide certain benefits concerning amounts owed or minimum payments due on the customer's credit account. The Plan is paid for by the customer via a periodic transaction on the customer's credit account. As the order of March 23, 2011, in Marquez v. First Premier Bank, No. CV 10-6898, p. 2, (C.D. Cal. Mar. 23, 2011)[1] observed in addressing the identical issue "[t]he subject matter of Credit Protection is within the scope of arbitrable issues under this provision because Credit Protection is a completely derivative service." Claims relating to the Plan are subject to the Agreement's arbitration provision.

While plaintiff, particularly in his post-Concepcion supplemental brief, argues the Plan and the Agreement are separate, independent contracts, the Plan makes no sense apart from the Agreement and the credit account it creates. Goodrich Cargo Systems v. Aero Union Corp., No. C 06-06226, 2006 WL 3708065 (N.D. Cal. Dec. 14, 2006), relied on by plaintiff, is distinguishable. In Goodrich, an Asset Purchase Agreement (APA) set forth the structure for a transaction in which plaintiff bought a manufacturing business unit from defendant. The APA did not contain an arbitration provision. An attachment to the APA, a Manufacturing License Agreement (MLA) did contain an arbitration provision. The MLA governed "a licensing arrangement whereby Defendant agreed to continue operating a portion of the business unit it sold [to the Plaintiff.]" Id. at * 2. The court found that the arbitration provision only applied to disputes under the MLA because the language of the MLA unambiguously defined the term "this Agreement" to mean the MLA itself and the arbitration clause required submission to arbitration of "all disputes, claims and controversies that arise under or relate in any way to this Agreement." Id. at * 3. Here, the arbitration language is in the credit card agreement and the language of the arbitration provision, as discussed above, is much broader and extends to claims and disputes arising out of the Agreement, the credit account, transactions on the credit account and the relationship between the parties.

Plaintiff also argues that he never agreed to the Plan and does not admit that he is bound by its terms. He claims, in a nutshell, that defendants marketed and sold "credit protection," charged him for "credit protection," but that for a variety of reasons what they have been charging him for was and is worthless. These claims are likewise subject to the Agreement's arbitration provision. These claims arise out of the relationship between the parties and transactions on the credit account and, therefore, fall within the plain language of the Agreement's arbitration provision.

Plaintiff also maintains the arbitration provision is unenforceable because it is unreasonable and unconscionable. "Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2." AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S.Ct. 1740, 1744 (2011). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." Id. (Citations omitted.) "The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." Id. at 1748. The

question in <u>Concepcion</u> was whether section 2 of the FAA "preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." <u>Id.</u> at 1744. <u>Concepcion</u> held that such a rule is preempted by the FAA because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." <u>Id.</u> at 1748. Therefore, the arbitration provision in the Agreement cannot be found unconscionable simply on the basis that it requires individual arbitration and bars litigating or arbitrating as a class.

 Plaintiff argues that, notwithstanding <u>Concepcion</u>, the arbitration provision is still unenforceable. Plaintiff contends that the "relatively fair and reasonable terms" of the arbitration clause at issue in <u>Concepcion</u> distinguishes it from the Agreement's arbitration provision, which plaintiff maintains is still unenforceable as unconscionable under state law. Plaintiff claims Illinois law applies and defendants argue South Dakota law applies because the Agreement has a provision choosing South Dakota law. Each side argues, however, that no matter which state law is applied, it wins.

 Both South Dakota and Illinois recognize two types of unconscionability–procedural and substantive. Illinois requires one or the other to bar enforcement. <u>See</u> <u>Kinkel v. Cingular Wireless LLC</u>, 857 N.E. 2d 250, 263 (Ill. 2006). South Dakota requires both. <u>See</u> <u>Nygaard v. Sioux Valley Hospitals & Health Sys.</u>, 731 N.W. 2d 184, 195 (S.D. 2007). Analysis for procedural unconscionability focuses on whether the plaintiff can fairly be said to have been aware of what he was agreeing to while substantive unconscionability focuses on the actual terms of the contract and their fairness.

 The arbitration provision appears in the Agreement under a heading in bold capital letters "**ARBITRATION AND LITIGATION**." It contains language in all capital letters "PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ALL DISPUTES ARISING OUT OF OR CONNECTED TO THIS CONTRACT SHALL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT." It contains language later in the provision in bold all capital letters "**YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT YOU MAY HAVE TO GO TO COURT OR TO HAVE A JURY TRIAL. FURTHERMORE, NEITHER YOU NOR WE MAY SERVE AS A REPRESENTATIVE, A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY. SIMILARLY, NEITHER YOU NOR WE MAY PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN A LAWSUIT OF ANY CLAIM.**" The first paragraph of the arbitration provision, directly under the heading **"ARBITRATION AND LITIGATION"** states "You have the right to opt-out of this Provision, which means you would retain your right to litigate your disputes in a court either before a judge or jury. To exercise your right to opt-out you must provide us with written notice no later than 30 days after your Credit Account is first opened. If we do not receive your written notice within that time frame, your rights to opt out will terminate and you agree that the provisions of this section will apply."

 Reviewing the Agreement as a whole, it cannot be said that the arbitration provision is hidden, as plaintiff suggests, "in the middle of a small-print, multi-page Agreement." The arbitration provision is easy enough to find and read. The use of bold typeface, all capital letters, and the combination of bold typeface with all capital letters makes the arbitration provision relatively noticeable among the provisions of the Agreement. The language "**YOU AGREE THAT YOU ARE VOLUNTARILY AND KNOWINGLY WAIVING ANY RIGHT YOU MAY HAVE TO GO TO COURT OR TO HAVE A JURY TRIAL**" is clear to understand, as is "**NEITHER YOU NOR WE MAY PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN A LAWSUIT OF ANY CLAIM.**" That he was agreeing to binding arbitration was readily accessible information to the plaintiff. The arbitration provision is not procedurally unconscionable.

 Substantive unconscionability looks to the actual terms of the contract and their fairness. The Agreement provides an opportunity to opt-out of the arbitration provision and retain all rights to litigate in court. "A class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity

to reject the contract term <u>or</u> if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner." O'Quinn v. Comcast, No. 10 C 2491, 2010 WL 4932665, * 5 (N.D. Ill. Nov. 29, 2010) (Lefkow, J.), quoting, Kinkel v. Cingular Wireless LLC, 857 N.E. 2d 250, 274 (Ill. 2006) (emphasis added). As noted above, the opt-out provision appears in the first paragraph directly under the heading **"ARBITRATION AND LITIGATION"** in the Agreement. This is a meaningful opportunity to opt out of the arbitration provision and defeats any claim that the content of the arbitration provision is unconscionable.

While the existence of the opt-out option would obviate the need to determine whether the arbitration provision limits the ability of the plaintiff to obtain a remedy in a cost-effective manner (the test discussed above is set up in the disjunctive, opt-out <u>or</u> no limit on a cost-effective remedy) in any case, Concepcion moots any argument on the cost benefits to the plaintiff of a class action versus an individual arbitration. Concepcion, 131 S.Ct. at 1753. ("The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.")

The Agreement provides that defendants will pay all expenses of arbitration that exceed what plaintiff would have paid in filing a lawsuit and that each party otherwise will bear its own costs. This is consistent with the allocation of costs in litigation and there is no showing plaintiff will be unable to pay the costs of arbitration. See Livingston v. Associate Finance, Inc., 339 F.3d 553, 557 (7th Cir. 2003).

Based on the foregoing, the arbitration provision is not unconscionable under either South Dakota or Illinois law. The arbitration provision is enforceable. Defendants' motion to submit additional authority is granted. Defendants' motion to compel arbitration is granted. This case is stayed pending arbitration. Defendants' motion to dismiss is denied as moot.

1. Plaintiff urges the court not to consider Marquez because he claims defendants were untimely in citing it and that it is irrelevant and nonauthoritative. However, any harm done by untimeliness was cured by the magistrate judge's order giving plaintiff time to respond to defendants' citation of this case. It is true that Marquez is not binding on this court but its interpretation of the identical contract provisions is consistent with this court's analysis and it is cited here for that reason.